MICHAEL R. BROOKS
Nevada Bar No. 7287
mbrooks@hutchlegal.com
HUTCHISON & STEFFEN
5371 Kietzke Lane
Reno, NV 89511
Telephone: (775) 853-8746
Fax: (775) 201-9611

DUANE M. GECK (State Bar No. 114823) (pro hac vice application pending)
dmg@severson.com
DONALD H. CRAM (State Bar No. 160004) (pro hac vice application pending)
dhc@severson.com
ANDREW S. ELLIOTT (State Bar No. 254757) (pro hac vice application pending)
ase@severson.com
SEVERSON & WERSON
A Professional Corporation
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Plaintiffs
ALLY FINANCIAL INC., ALLY BANK and
MOTORS INSURANCE CORPORATION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| ALLY FINANCIAL INC., a Delaware corporation; ALLY BANK, a Utah state-chartered bank; MOTORS INSURANCE CORPORATION, a Michigan corporation,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MOUNTAIN WEST AUTO GROUP LLC, a Nevada limited liability company; and KEVIN E. SHEPPARD, an individual,<br><br>    Defendants. | Case No. ___<br><br>**COMPLAINT FOR:**<br><br>**1.  BREACH OF CROSS COLLATERAL, CROSS DEFAULT, AND GUARANTY AGREEMENT AGAINST ALL DEFENDANTS;**<br><br>**2.  BREACH OF PERSONAL GUARANTEES AGAINST KEVIN E. SHEPPARD** |

Ally Financial Inc. ("Ally Financial") and Ally Bank (collectively Ally Financial and Ally Bank are referred to as the "Ally Parties") together with Motors Insurance Corporation ("MIC"), referred to herein as "Plaintiffs" allege as follows:

19001.0096/16631545.6

Case No. __

COMPLAINT

**The Parties**

1.      Ally Financial is a Delaware corporation, with its principal place of business located at 500 Woodward Avenue, Detroit, Wayne County, Michigan 48226.  Ally Financial is in good standing with the Secretary of State for the State of Nevada.

2.      Ally Bank is a Utah state-chartered bank, with its principal place of business located at 200 West Civic Center Drive, Sandy, Salt Lake County, Utah 84070.  Ally Bank is in good standing with the Secretary of State for the State of Nevada.

3.      MIC is a Michigan corporation, with its principal place of business located at 500 Woodward Avenue, Detroit, Wayne County, Michigan 48226.  MIC is authorized by the Nevada Insurance Commissioner to transact business in Nevada.  MIC is a company in the Ally Insurance Group of Companies (collectively "Ally Insurance"), which offers vehicle service contracts to motor vehicle dealerships to sell to their customers under various names, including Ally Premier Protection, so called GAP Waiver products, and other products (individually and collectively referred to as "Ally Insurance Products").

4.      Non-party MRH Auto-Reno, LLC ("MRH-Reno") is a Texas limited liability company registered with the Nevada Secretary of State as a foreign limited liability company, with its principal place of business formerly located at 1220 Kietzke Lane, Reno, Washoe County, Nevada 89502.[1]  MRH-Reno was engaged in business as an automobile dealer.  On July 24, 2023, MRH-Reno filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada; Case No. 23-50502-hlb.  On April 17, 2024, the MRH-Reno bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code.

5.      Non-party MRH Auto-Winnemucca, LLC ("MRH-Winnemucca," and together with MRH-Reno, referred to as the "Dealerships") is a Texas limited liability company registered with the Nevada Secretary of State as a foreign limited liability company, with its principal place

---

[1]      According to the Texas Comptroller of Public Accounts website, MRH-Reno's mailing address as of the time of this filing is PO BOX 7431 Reno, NV 89510-7431.

of business formerly located at 5050 E. Winnemucca Boulevard, Winnemucca, Humboldt County, Nevada 89445.[2]  MRH-Winnemucca was engaged in business as an automobile dealer.  On July 24, 2023, MRH-Winnemucca filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada; Case No. 23-50503-hlb.  On January 23, 2024, the MRH-Winnemucca bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code.

6.    Non-party MRH Auto Enterprises, LLC ("MRH-Enterprises") is a Texas limited liability company with its principal place of business formerly located at 1220 Kietzke Lane, Reno, Washoe County, Nevada 89502.[3]  MRH Enterprises owns 100% of the membership interests in MRH-Reno and owns 100% of the membership interests in MRH-Winnemucca.

7.    Defendant Mountain West Auto Group LLC ("Mountain West") is a Nevada limited liability company with its principal place of business formerly located at 1650 Vassar Street, Reno, Washoe County, Nevada 89502.[4]  Mountain West owns 100% of the membership interests in MRH-Enterprises.

8.    Defendant Kevin E. Sheppard ("Sheppard" or "Guarantor") is an individual who is a citizen of the state of Nevada domiciled in Reno, Washoe County, Nevada, 89436.  Sheppard and his spouse, Jackie Sheppard, own 100% of the membership interests in Mountain West.

### Jurisdiction & Venue

9.    The jurisdiction of the Court over the subject matter of this action is predicated on diversity jurisdiction as defined by 28 U.S.C. §1332(a).  The amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and the claims are between citizens of different states.

10.    Plaintiffs allege damages in the approximate amount of $7,405,004.24 exclusive of

---

[2]    According to the Texas Comptroller of Public Accounts website, MRH-Winnemucca's mailing address as of the time of this filing is PO BOX 7431 Reno, NV 89510-7431.

[3]    According to the Texas Comptroller of Public Accounts website, MRH-Enterprises' mailing address as of the time of this filing is PO BOX 7431 Reno, NV 89510-7431.

[4]    The Nevada Secretary of State's website includes an online search function, however, Mountain West's "Principal Office" is listed as "N/A".

attorneys' fees. Interest and other charges continue to accrue.

11.     Ally Financial is a citizen of Delaware where it is incorporated.  Ally Financial is also a citizen of Michigan where its principal place of business is located.

12.     Ally Bank is a citizen of Utah where it was formed as a Utah state-chartered bank. Ally Bank is also a citizen of Michigan where its principal place of business is located.

13.     MIC is citizen of Michigan where it was incorporated and where its principal place of business is located.

14.     For purposes of determining subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), an LLC is a citizen of every state of which its owners/members are citizens.  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

15.     Sheppard is an individual who is a citizen of the state of Nevada domiciled in Reno, Washoe County, Nevada, 89436.

16.     Sheppard's wife, non-party Jackie Sheppard, is an individual who is a citizen of the state of Nevada domiciled in Reno, Washoe County, Nevada, 89436.

17.     Sheppard and Jackie Sheppard together own 100% of the membership interests in Mountain West.

18.     Therefore, for jurisdictional purposes, all of the defendants are citizens of the State of Nevada, and complete diversity exists with Plaintiffs.

19.     This Court has both subject matter and personal jurisdiction over all Defendants because they are: (a) citizens of Nevada; (b) have continuous and systematic contacts with Nevada; and (c) have purposefully availed themselves of the privilege of conducting business in Nevada.  Additionally, as to defendant Mountain West, it is an entity formed under the laws of Nevada.  Further, the events, transactions, and omissions giving rise to the claims in this action occurred in Nevada.

20.     Venue is proper under 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claims occurred in Washoe County, Nevada which is within this judicial district.

19001.0096/16631545.6                         4                         Case No. ___

COMPLAINT

**General Allegations**

**Inventory Financing and Security Agreements Between the Dealerships and the Ally Parties**

21. Each of the Dealerships entered into a substantially similar Inventory Financing and Security Agreement with the Ally Parties dated as of April 26, 2019 (each, an "Inventory Financing Agreement"). A true and correct copy of the MRH-Reno Inventory Financing Agreement is attached as **Exhibit 1** and incorporated by this reference (Bates Number 2-23). A true and correct copy of the MRH-Winnemucca Inventory Financing Agreement is attached as **Exhibit 2** and incorporated by this reference (Bates Number 25-45).

22. Under the Inventory Financing Agreements, the Ally Parties provided the Dealerships with inventory financing (i.e., loans made pursuant to a revolving line of credit) for the acquisition of vehicles for sale and lease through the Dealerships' retail automotive sales business. Upon the sale or lease of each vehicle, the Dealerships agreed to promptly pay the Ally Parties the amount of the loan advanced to the Dealerships to acquire the sold or leased vehicle.

23. Under the Inventory Financing Agreements, and in order to secure all present and future obligations of the Dealerships to the Ally Parties, the Dealerships granted the Ally Parties a continuing security interest in substantially all of the Dealerships' personal property, including all motor vehicles, as well as any proceeds from the sale or other disposition of such collateral (collectively referred to as the "Collateral").

24. The Ally Parties properly perfected their security interest in the Collateral by filing UCC-1 financing statements and amendments with the Office of the Secretary of State of Texas.

25. Under the terms of the Inventory Financing Agreements, the Dealerships agreed that they would fully, promptly and faithfully pay to the Ally Parties the amount of the loan advanced to the Dealerships, together with interest, other charges and fees provided for in the Inventory Financing Agreement. The Dealerships agreed to repay the principal amount of such loans in full to the Ally Parties as each Vehicle was sold or leased. (Exs. 1 & 2, III.C.2(a) (Bates Number 6, 29)).

26. The Dealerships also agreed to the following terms and conditions as set forth in the Inventory Financing Agreements:

a.      Upon the Dealerships' default, the Ally Parties have the right to repossess collateral, directly collect accounts and proceeds, and exercise other rights and remedies under the Inventory Financing Agreement and applicable law (Exs. 1 & 2, III.J.2 & 6 (Bates Number 18, 41)); and

b.      Upon the Dealerships' default, the Ally Parties have the right to demand immediate payment in full of all obligations owed by the Dealerships (Exs. 1 & 2, III.J.1 & 2 (Bates Number 18, 41)).

### The Advance Agreement Between MRH-Enterprises, MRH-Reno, MRH-Winnemucca and MIC

27.     MRH-Enterprises, MRH-Reno, and MRH-Winnemucca entered into an Advance Agreement with MIC (the "Advance Agreement") pursuant to which MIC made an advance payment of one million five hundred thousand dollars ($1,500,000.00) ("Advance Payment") to MRH-Enterprises, MRH-Reno, and MRH-Winnemucca to induce them to exclusively sell Ally Insurance Products to its customers.  The Advance Agreement includes Schedules A and B, effective April 30, 2019, as modified by updated Schedules A and B executed on November 5, 2020.  A true and correct copy of the Advance Agreement, as well as the Schedules, is attached as **Exhibit 3** and incorporated by this reference (Bates Number 45-56).

28.     The Advance Agreement includes an agreed-upon formula for repayment of the Advance Payment based upon the application by MIC of credits against the amount of the Advance Payment due and owing by MRH-Enterprises, MRH-Reno, and MRH-Winnemucca to MIC for each Ally Insurance Product sold in the amount of the corresponding Advance Payment Credit indicated in Schedule A so long as MRH-Enterprises, MRH-Reno, and MRH-Winnemucca are not in default thereunder.

29.     As security for their agreement to repay the Advance Payment to MIC, MRH-Enterprises, MRH-Reno, and MRH-Winnemucca granted MIC a continuing security interest in and a collateral assignment of the Collateral.

30.     The Advance Agreement provides that the Advance Payment becomes immediately due and payable upon any default or material breach by MRH-Enterprises, MRH-Reno, and

19001.0096/16631545.6                                          6                                          Case No. ___

COMPLAINT

MRH-Winnemucca. (Ex. 3, III.B.2 & 5 (Bates Number 48).)

31. Pursuant to the Advance Agreement, MRH-Enterprises, MRH-Reno, and MRH-Winnemucca agreed to a cross-default provision providing that any default or breach by them or any entity or individual owning, owned by, affiliated or under common control with them under an agreement with the Ally Parties would constitute a breach under the Advance Agreement. (Ex. 3, III.N (Bates Number 49).)

32. Under the Advance Agreement, MRH-Enterprises, MRH-Reno, and MRH-Winnemucca agreed to pay to MIC within ten days of MIC's demand for payment, any and all of MIC's costs, fees, and expenses including, without limitation, attorney and other legal fees, arising under or related to the enforcement of its rights under the Advance Agreement. (Ex. 3, III.F (Bates Number 48).)

33. Ally Financial serves as a representative of MIC and is charged with perfecting security interests in favor of MIC by filing UCC-1 financing statements with the appropriate UCC filing office. Ally Financial perfected MIC's security interests in the MRH-Reno and MRH-Winnemucca Collateral by filing UCC-1 financing statements and amendments with the Office of the Secretary of State of Texas.

**Term Loan Agreement**

34. On April 30, 2019, MRH-Enterprises and MRH-Winnemucca entered into a Commercial Loan and Security Agreement with Ally Bank ("Term Loan Agreement"). Under the Term Loan Agreement, Ally Bank agreed to lend $2,500,000 to MRH-Enterprises for its use in the acquisition of equipment. A true and correct copy of the Term Loan Agreement is attached as **Exhibit 4** and is incorporated by this reference (Bates Number 57-72).

35. Under the Term Loan Agreement, MRH-Winnemucca granted Ally Bank a security interest in the MRH-Winnemucca Collateral.

36. The Term Loan Agreement provides that the failure of MRH-Enterprises, MRH-Winnemucca or any affiliate or subsidiary of either to timely pay any amount owed to the Ally Parties constitutes as default under the Term Loan Agreement. (Ex. 4, III.J.1 (Bates Number 67).)

37. In the event of a default under the Term Loan Agreement, the Ally Parties are

entitled to declare any and/or all amounts remaining unpaid thereunder to be immediately due and payable, and to take immediate possession of the MRH-Winnemucca Collateral, among other rights and remedies. (Ex. 4, III.K.1.d (Bates Number 68).)

**The Cross Collateral, Cross Default, and Guaranty Agreement**

38.    On June 4, 2021, in connection with Sheppard's acquisition of MRH-Reno, MRH-Winnemucca and MRH-Enterprises by stock purchase agreement with the former owners (Thomas Rackley and Robert Milner), MRH-Reno, MRH-Winnemucca, MRH-Enterprises, Mountain West, and Sheppard, among others, executed and delivered to the Ally Parties and to MIC a Cross Collateral, Cross Default, and Guaranty Agreement (the "Cross Agreement"). A true and correct copy of the Cross Agreement is attached as **Exhibit 5** and is incorporated herein by reference (Bates Number 74-85).

39.    The Cross Agreement applies to MRH-Reno's, MRH-Winnemucca's, MRH-Enterprises', Mountain West's and Sheppard's, among others' (collectively referred to in the Cross Agreement as the "Dealership Parties"), indebtedness under the Inventory Financing Agreements, the Term Loan Agreement, the Advance Agreement and other loans or financing accommodations that the Ally Parties or MIC made to the Dealership Parties.  Under the Cross Agreement, the Dealership Parties guaranteed the performance and payment of MRH-Reno's, MRH-Winnemucca's, MRH-Enterprises', Mountain West's and Sheppard's, among others', obligations owed to the Ally Parties and to MIC.  (Ex. 5, pp.2-3 (Bates Number 76-77).)

**Sheppard Guaranty Agreements**

40.    On June 11, 2021, in connection with Sheppard's acquisition of ownership of the Dealerships through the stock purchase agreement with the former owners and in order to induce the Ally Parties to continue to extend financing to MRH-Reno, MRH-Winnemucca and MRH-Enterprises, Sheppard made, executed and delivered to the Ally Parties three guaranty agreements (collectively, the "Sheppard Guarantees").  Under the Sheppard Guarantees, Sheppard personally guaranteed full payment of all indebtedness of MRH-Reno, MRH-Winnemucca and MRH-Enterprises, to the Ally Parties together with all costs, expenses and attorneys' fees incurred by the Ally Parties in connection with any default of MRH-Reno, MRH-Winnemucca and MRH-

Enterprises. True and correct copies of the Sheppard Guarantees are attached as **Exhibits 6-8** and incorporated by this reference (Bates Number 86-89, 90-93 and 94-97). The Inventory Financing Agreements, the Term Loan Agreement, the Advance Agreement, the Cross Agreement, and the Sheppard Guarantees are collectively referred to as the "Loan Agreements."

**Events Of Default—Sales Out Of Trust**

41.     During the week of May 22, 2023, the Ally Parties conducted floorplan inventory audits of the Dealerships. Based on these and subsequent inventory audits, the Ally Parties ultimately determined that the Dealerships sold and failed to timely pay for 87 vehicles out of trust[5] in the total amount of $3,081,626.54: MRH-Reno sold 74 of the 87 SOT vehicles and failed to pay $2,443,927; MRH-Winnemucca sold 13 of the 87 SOT vehicles and failed to pay $637,699.54.

42.     By letter dated May 30, 2023, the Ally Parties provided notice of the default to the Dealerships and demanded that they cure the SOT defaults. The Dealerships failed to do so. A true and correct copy of the May 30, 2023 letter is attached as **Exhibit 9** and incorporated by this reference (Bates Number 98-105).

43.     The Dealerships' defaults under their respective Inventory Financing Agreements constitute a default under the Term Loan Agreement, Advance Agreement and the Cross Agreement.

44.     By letter dated June 12, 2023, the Ally Parties demanded that the Dealerships deliver physical control of all vehicle keys, all manufacturer certificates of origin, all certificates of title, and other title documents, and to surrender all Collateral, including all motor vehicle collateral. A true and correct copy of the June 12, 2023 letter is attached as **Exhibit 10** and

---

[5]     If a dealership fails to repay a flooring loan after the financed vehicle is sold by the dealership, in effect converting the borrowed loan funds to its own use, the dealership breaches its financing agreement with the Ally Parties and is said to be "sold out of trust" or "SOT." Moreover, the Ally Parties are directly harmed when a dealership sells a vehicle "SOT" because the Ally Parties' vehicle collateral is gone. An SOT is a serious breach of the financing agreement because the dealership's debt owed to the Ally Parties becomes unsecured – the Ally Parties cannot recover a vehicle sold to a customer in the ordinary course of business under Nevada Commercial Code section 9320.

incorporated by this reference (Bates Number 106-118).

45. In response, the parties negotiated and entered into an Agreement for the Voluntary Surrender of Collateral dated as of June 16, 2023 (the "Voluntary Surrender Agreement"), pursuant to which the Dealerships agreed to allow the Ally Parties to repossess the vehicle collateral. A true and correct copy of the Voluntary Surrender Agreement is attached as **Exhibit 11** and incorporated by this reference (Bates Number 119-120).

46. The Ally Parties completed the removal of all available vehicles from the Dealerships' business premises during the week of June 26, 2023. In total, the Ally Parties repossessed 399 vehicles from the Dealerships. For approximately 100 of the used vehicles, the Dealerships have failed or refused to provide certificates of title or other required title transfer documentation, which has severely impaired the Ally Parties' ability to dispose of these vehicles.

47. On July 24, 2023, the Ally Parties provided written Notifications of Disposition of Collateral to the Dealerships and other required parties (the "Notifications"). True and correct copies of the Notifications are attached as **Exhibit 12** and incorporated by this reference (Bates Number 121-148).

48. On July 24, 2023, the Dealerships filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada; Case No. 23-50502-hlb and Case No. Case No. 23-50503-hlb. As described above, both cases have been converted to cases under Chapter 7 of the Bankruptcy Code.

**Disposition of Collateral and Balances Owing to MIC and the Ally Parties**

49. On November 6, 2023, the Bankruptcy Court entered orders granting the Ally Parties relief from the automatic stay, permitting the Ally Parties to dispose of the Collateral consistent with state law. True and correct copies of the Bankruptcy Court's orders granting the Ally Parties' relief from the automatic stay are attached as **Exhibit 13** and incorporated by this reference (Bates Number 149-155).

50. On various dates after November 6, 2023, the Ally Parties disposed of portions of the Collateral.

51. After application of the net proceeds from the Ally Parties' disposition of the

Collateral, as of May 31, 2024, there is due and owing the following amounts:

| MRH-Reno Inventory Financing | | Amount Owed |
|---|---|---|
| Inventory Financing | | |
| Principal Outstanding | | $4,118,473.80 |
| Interest, Expenses & Fees | | $799,399.20 |
| **Subtotal** | | **$4,917,873.00** |

| MRH-Winnemucca Inventory Financing | | Amount Owed |
|---|---|---|
| Inventory Financing | | |
| Principal Outstanding | | $1,006,682.02 |
| Interest, Expenses & Fees | | $459,019.98 |
| **Subtotal** | | **$1,465,702.00** |

| Term Loan Agreement | | Amount Owed |
|---|---|---|
| Principal Outstanding | | $271,808.81 |
| Interest, Expenses, Late Fees and Insurance | | $71,729.73 |
| **Subtotal** | | **$343,538.54** |

| Advance Agreement | | Amount Owed |
|---|---|---|
| Amount Outstanding | | $677,890.70 |
| **Subtotal** | | **$677,890.70** |

| Total Outstanding | | Amount Owed |
|---|---|---|
| MRH-Reno Inventory Financing | | $4,917,873.00 |
| MRH-Winnemucca Inventory Financing | | $1,465,702.00 |
| Term Loan Agreement | | $343,538.54 |
| Advance Agreement | | $677,890.70 |
| **Total** | | **$7,405,004.24** |

52. The Ally Parties have performed all conditions, covenants and promises required of them in accordance with the terms and conditions of the Inventory Financing Agreements.

53. MRH-Reno and MRH-Winnemucca defaulted under the Inventory Financing Agreements by failing to cure the SOT defaults described above, among other defaults.

54. As of May 31, 2024, the balance due the Ally Parties from MRH-Reno under its Inventory Financing Agreement is $4,917,873.00, and the balance due the Ally Parties from MRH-Winnemucca under its Inventory Financing Agreement is $1,465,702.00.

55. The Ally Parties have demanded that MRH-Reno and MRH-Winnemucca pay the amounts owing but despite such demands, MRH-Reno and MRH-Winnemucca have failed and

refused to do so.

56.   MIC has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the Advance Agreement.

57.   MRH-Enterprises, MRH-Reno, and MRH-Winnemucca defaulted under the Advance Agreement by failing to make "True-Up Payments" as required under such agreement, which constitutes a default.  (Ex. 3, III.B.2 (Bates Number 48).)  Additionally, the Dealerships' defaults under their respective Inventory Financing Agreements constitute a default under the Advance Agreement. (Ex. 3, III.N (Bates Number 49).)  As a result of these defaults, and others, repayment of the Advance Payment became immediately due and payable to MIC.  (Ex. 3, III.B.5 (Bates Number 48).)

58.   As of May 31, 2024, the balance due under the Advance Agreement from MRH-Enterprises, MRH-Reno, and MRH-Winnemucca is $677,890.70.

59.   MIC has demanded that MRH-Enterprises, MRH-Reno, and MRH-Winnemucca pay the amounts owing but despite such demands, MRH-Enterprises, MRH-Reno, and MRH-Winnemucca have failed and refused to do so.

60.   Ally Bank has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the Term Loan Agreement.

61.   MRH-Enterprises is in default under the Term Loan Agreement because it has failed to make required monthly payments since May, 2024, among other defaults.  Additionally, the Dealerships' defaults under their respective Inventory Financing Agreements constitute a default under the Term Loan Agreement.

62.   As of May 31, 2024, the balance due under the Term Loan Agreement is $343,538.54.  Interest and other charges continue to accrue at the rate stated in the Term Loan Agreement.

63.   The Ally Parties have demanded that MRH-Enterprises pay the amounts owing under the Term Loan Agreement but despite this demand, MRH-Enterprises has failed and refused to do so.

64.   By the terms of the Inventory Financing Agreements, the Term Loan Agreement,

and the Advance Agreement, MRH-Enterprises, MRH-Reno, and MRH-Winnemucca have agreed to pay reasonable attorneys' fees and costs incurred by the Ally Parties in enforcing their rights thereunder.  By reason of the defaults described above, it has become necessary for MIC and the Ally Parties to employ the undersigned counsel to commence and prosecute this action and the Ally Parties are entitled to recover its attorneys' fees and costs incurred herein.

## FIRST CLAIM FOR RELIEF

### (Breach of Cross Agreement - By the Ally Parties and MIC Against All Defendants)

65.     Plaintiffs hereby incorporate by reference all prior allegations of this complaint as though fully set forth herein.

66.     The Ally Parties and MIC have performed all conditions, covenants and promises required of them in accordance with the terms and conditions of the Cross Agreement.

67.     Each Defendant is in default under the Cross Agreement because the Dealerships defaulted under the terms of their respective Inventory Financing Agreements, MRH-Enterprises defaulted under the terms of the Term Loan Agreement, and MRH-Enterprises, MRH-Reno, and MRH-Winnemucca defaulted under the terms of the Advance Agreement.  Under the Cross Agreement "it is agreed that any default or breach by any of the Dealership Parties in the payment or performance under any of the Financing Accommodations will, at the option of the Ally Parties [defined therein as including MIC], constitute a default under each Financing Accommodation." The term "Financing Accommodation" is defined as "the Security Agreement(s) and any and all other agreements evidencing an Obligation." The term "Obligation" means:

> any liability, indebtedness or obligation of every kind and nature, now existing or hereafter arising, whether created directly, indirectly or acquired by assignment, whether matured or unmatured, and any cost or expense, including without limitation reasonable attorneys' fees, incurred in the collection or enforcement of any such obligation of any one or more of the Dealership Parties, owed by any one or more of the Dealership Parties to one or more of the Ally Parties, any successor, assign, subsidiary or affiliate of Ally Parties.

68.     As of May 31, 2024, the total principal indebtedness due under the Cross Agreement to the Ally Parties is $6,727,113.54, comprised of the total balances due under the MRH-Reno Inventory Financing Agreement ($4,917,873.00), the MRH-Winnemucca Inventory

Financing Agreement ($1,465,702.00), and the Term Loan Agreement ($343,538.54).  Interest and other charges continue to accrue daily as determined by the Cross Agreement, the Inventory Financing Agreements and the Term Loan Agreement.

69.     As of May 31, 2024, the total principal indebtedness due under the Cross Agreement to MIC is $677,890.70.

70.     The Ally Parties and MIC have demanded that Sheppard pay the amounts owing, but despite this demand, Sheppard has failed and refused to do so.  By this Complaint, the Ally Parties and MIC demand that Mountain West pay the amounts owing, but despite this demand, Mountain West has failed and refused to do so

71.     By the terms of the Cross Agreement, each Defendant agreed to pay reasonable attorneys' fees and costs incurred by the Ally Parties and by MIC enforcing their rights thereunder.  By reason of the defaults it has become necessary for the Ally Parties and for MIC to employ the undersigned counsel to commence and prosecute this action and the Ally Parties and MIC are entitled to recover its attorneys' fees and costs incurred herein.

## SECOND CLAIM FOR RELIEF

### (Breach of the Personal Guarantees - By the Ally Parties Against Sheppard)

72.     Plaintiffs hereby incorporate by reference all prior allegations of this complaint as though fully set forth herein.

73.     Under the Sheppard Guarantees, Sheppard guaranteed full payment of all obligations of MRH-Reno, MRH-Winnemucca, and MRH-Enterprises to the Ally Parties.

74.     The Dealerships defaulted under their respective Inventory Financing Agreements as set forth above.  The Dealerships' indebtedness to the Ally Parties under the Inventory Financing Agreements is now due and payable in full.  The Dealerships' indebtedness to the Ally Parties under the Inventory Financing Agreements is an obligation of Sheppard which is included within the Sheppard Guarantees of the obligations of the Dealerships.

75.     The Ally Parties and MIC have demanded that Sheppard pay the balance of the obligations owed by the Dealerships under the Inventory Financing Agreements.

76.     As of May 31, 2024, by reason of Sheppard's guaranty of the obligations owed by

the Dealerships under the Inventory Financing Agreements, Sheppard owes the Ally Parties approximately $6,383,575.00 (exclusive of attorneys' fees).  Interest and other charges continue to accrue in accordance with the terms and provisions of the Inventory Financing Agreements.

77.    MRH-Enterprises defaulted under the Term Loan Agreement as set forth above.  MRH-Enterprises' indebtedness to Ally Bank under the Term Loan Agreement is now due and payable in full.  MRH-Enterprises' indebtedness under the Term Loan Agreement is an obligation of Sheppard which is included within the Sheppard Guarantees of the obligations of MRH-Enterprises.

78.    The Ally Parties have demanded that Sheppard to pay the balance of the obligations owed by MRH-Enterprises.

79.    As of May 31, 2024, by reason of Sheppard's guaranty of the obligations owed by MRH-Enterprises under the Term Loan Agreement, Sheppard owes Ally Bank approximately $343,538.54 (exclusive of attorneys' fees).  Interest and other charges continue to accrue in accordance with the terms and provisions of the Term Loan Agreement.

80.    The Sheppard Guarantees provide that Sheppard shall pay reasonable attorneys' fees and expenses incurred by the Ally Parties in connection with any default of MRH-Reno, MRH-Winnemucca, and MRH-Enterprises.  By reason of Sheppard's defaults, the Ally Parties have employed the undersigned counsel to commence and prosecute this action and the Ally Parties are entitled to recover their attorneys' fees and costs incurred herein.

**PRAYER**

WHEREFORE, the Ally Parties and MIC prays judgment against the Defendants as follows:

1.    On the first claim for relief, under the Cross Agreement for damages against all Defendants as follows:

a.    in favor of the Ally Parties in the sum of $4,917,873.00, for the amount of the indebtedness owed to the Ally Parties under MRH-Reno's Inventory Financing Agreement, with additional interest and other charges as allowed by MRH-Reno's Inventory Financing Agreement;

b.      in favor of the Ally Parties in the sum of $1,465,702.00, for the amount of the indebtedness owed to the Ally Parties under MRH-Winnemucca's Inventory Financing Agreement, with additional interest and other charges as allowed by MRH-Winnemucca's Inventory Financing Agreement;

c.      in favor of Ally Bank in the sum of $343,538.54, for the amount of the indebtedness owed to Ally Bank under the Term Loan Agreement, with additional interest and other charges as allowed by the Term Loan Agreement;

d.      in favor of MIC in the sum of $677,890.70, for the amount of the indebtedness owed to MIC under the Advance Agreement, with other charges as allowed by the Advance Agreement;

2.      On the second claim for relief against Kevin E. Sheppard in favor of the Ally Parties as follows:

a.      in favor of the Ally Parties in the sum of $4,917,873.00, for the amount of the indebtedness owed to the Ally Parties under MRH-Reno's Inventory Financing Agreement, with additional interest and other charges as allowed by MRH-Reno's Inventory Financing Agreement;

b.      in favor of the Ally Parties in the sum of $1,465,702.00, for the amount of the indebtedness owed to the Ally Parties under MRH-Winnemucca's Inventory Financing Agreement, with additional interest and other charges as allowed by MRH-Winnemucca's Inventory Financing Agreement;

c.      in favor of Ally Bank in the sum of $343,538.54, for the amount of the indebtedness owed to Ally Bank under the Term Loan Agreement, with additional interest and other charges as allowed by the Term Loan Agreement;

3.      For costs of suit;

4.      For reasonable attorneys' fees; and

5.      For such other and further relief against all Defendants as the Court may deem just

19001.0096/16631545.6

16

COMPLAINT

Case No. ___

and proper.

DATED:  June 25, 2024                    HUTCHISON & STEFFEN


                                          By:    /s/ *Michael R. Brooks*
                                                    MICHAEL R. BROOKS

                                          Attorneys for Plaintiffs,
                                          ALLY FINANCIAL INC., ALLY BANK and
                                          MOTORS INSURANCE CORPORATION