MICHAEL R. BROOKS
Nevada Bar No. 7287
mbrooks@ghidottiberger.com
GHIDOTTI | BERGER, LLP
7251 W. Lake Mead Blvd., Ste 470
Las Vegas, Nevada 89128
Telephone: (949) 427-2010

DUANE M. GECK (State Bar No. 114823) (admitted pro hac vice)
duane.geck@stinson.com
DONALD H. CRAM (State Bar No. 160004) (admitted pro hac vice)
don.cram@stinson.com
ANDREW S. ELLIOTT (State Bar No. 254757) (admitted pro hac vice)
andrew.elliott@stinson.com
STINSON LLP
595 Market Street, Suite 2600
San Francisco, California 94105
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Plaintiffs
ALLY FINANCIAL INC., ALLY BANK and
MOTORS INSURANCE CORPORATION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA, RENO DIVISION

| | |
|---|---|
| ALLY FINANCIAL INC., a Delaware corporation; ALLY BANK, a Utah state-chartered bank; MOTORS INSURANCE CORPORATION, a Michigan corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> MOUNTAIN WEST AUTO GROUP LLC, a Nevada limited liability company; and KEVIN E. SHEPPARD, an individual, <br><br> Defendants. | Case No. 3:24-cv-00268-MMD-CLB <br><br> **PLAINTIFFS' ALLY FINANCIAL INC., ALLY BANK AND MOTORS INSURANCE CORPORATION'S OPOSITION TO KEVIN E. SHEPPARD'S MOTION FOR SUMMARY JUDGMENT** <br><br> The Hon. Miranda M. Du |

19001.0096/17053083.7

Case No. 3:24-cv-00268-MMD-CLB

Plaintiffs Ally Financial Inc. ("Ally") and Ally Bank (collectively Ally and Ally Bank are referred to as the "Ally Parties"), together with Motors Insurance Corporation ("MIC," collectively with the Ally Parties referred to as the "Plaintiffs"), bring this opposition to Defendants Kevin E. Sheppard ("Sheppard") and Mountain West Auto Group LLC's Motion for Summary Judgment (the "Motion").[1]

## I.    INTRODUCTION

This is an action to recover debt owed to Plaintiffs for secured loans Plaintiffs made to non-parties MRH Auto-Reno, LLC ("MRH Reno"), MRH Auto-Winnemucca, LLC ("MRH-Winnemucca," and together with MRH-Reno referred to as the "Dealerships"), and MRH Auto Enterprises, LLC ("MRH-Enterprises," together with the Dealerships referred to as the "MRH-Parties"). These loans financed the Dealerships' acquisition of equipment and parts as well as new and used vehicles. Sheppard entered into three guaranty agreements and a cross-guaranty agreement personally guaranteeing obligations owed to the Plaintiffs by the MRH-Parties. Sheppard does not dispute these material facts. Indeed, the Motion expressly admits the MRH-Parties are indebted to Plaintiffs and that Sheppard guaranteed that debt.

Rather, the Motion focuses on two other issues which have no bearing on this lawsuit. Sheppard first suggests, but does not affirmatively argue, that this Court lacks jurisdiction because Plaintiffs' collection action is a "core proceeding" under which the bankruptcy court has exclusive jurisdiction. Sheppard is wrong. This action is not a core bankruptcy proceeding, it is a collection action against a non-bankrupt guarantor.[2]

---

[1]    On October 28, 2024, the Clerk filed an entry of default against Mountain West Auto Group LLC ("Mountain West"). Dkt. No. 60. Mountain West has not sought nor obtained relief from default and thus lacks standing to seek the relief requested in its summary judgment motion.

[2]    On July 24, 2023, the Dealerships filed voluntary petitions for relief under Chapter 11 of the Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada; Case Nos. 23-50502-hlb and 23-50503-hlb respectively). The Ally Parties filed Motions for Relief from the Automatic Stay to repossess and dispose of their collateral and the Dealerships (then still under the control of Sheppard) did not oppose these motions. By bankruptcy court orders entered November 6, 2025, the Ally Parties obtained relief from the Automatic Stay allowing for the repossession and disposition of the Collateral. Plaintiffs filed Proofs of Claim in the Dealerships' bankruptcy cases on November 27, 2023.

Sheppard next argues that Plaintiffs violated NRS 482.516—a statute requiring post-repossession notices with specific disclosures in certain circumstances.  But Sheppard is wrong here, too.  By its terms, NRS 482.516 applies only to transactions involving the retail financing or leasing of a single vehicle.  Sheppard did not buy or lease any vehicle.  Instead, he guaranteed the performance of the Dealerships on their inventory loans as well as other loans of the Dealerships.  NRS 482.516's language shows it does not apply to inventory loans and the specific disclosures Sheppard claims he did not receive were not required.

For these reasons, discussed more thoroughly below, this Court should deny Sheppard's Motion and enter judgment in favor of Plaintiffs on their own recently filed motion for summary judgment.

## II.   THE COURT SHOULD DENY SHEPPARD'S MOTION FOR SUMMARY JUDGMENT

### A.   This Court Has Original Jurisdiction Over Plaintiffs' Claims Against Sheppard as Guarantor of the Indebtedness Owed to Plaintiffs by the MRH-Parties

Sheppard begins his brief by noting "the factual and legal issues that must be resolved in this motion for summary judgment (as well as any counter-motion filed by the Plaintiffs) may" be core bankruptcy proceedings and thus under the exclusive jurisdiction of the Bankruptcy Court.  (Dkt. No. 65, Motion, 2:15-18.)  Sheppard does not affirmatively argue that this matter is a core bankruptcy proceeding, nor does he formally seek abstention.  In any event, Sheppard is wrong for two independent reasons.

First, to the extent this guarantor collection action "relates to" the pending bankruptcy matters, Title 11 of the US Code expressly states that District Courts retain original, concurrent jurisdiction over even core bankruptcy proceedings.  28 U.S.C. § 1334(b).  Second, and perhaps more importantly, this action is not a core bankruptcy proceeding.  As Sheppard acknowledges, " 'Core Proceedings' are (1) Counterclaims by the estate against persons filing claims against the estate. 28 U.S.C. §157(b)(2)(C); (2) Orders to turn over property of the estate. 28 U.S.C. §157(b)(2)(E); and (3) Determinations of the validity, extent, or priority of liens. 28 U.S.C. §157(b)(2)(K)."  (Dkt. No. 65, 3:4-8.)  This lawsuit does not include (1) counterclaims by either

Debtor, (2) orders to turn over property of either Debtor, or (3) determinations as to validity, extent or priority of liens.

**B.      Sheppard Admits He Guaranteed the Debt Owed to Plaintiffs by the MRH-Parties under the Loan Agreements**

The Complaint asserts two breach of contract claims against Sheppard.  One for breach of the Cross Collateral, Cross Default, and Guaranty Agreement (the "Cross Agreement") and one for breach of three guaranty agreements (collectively, the "Sheppard Guarantees").  By way of the Cross Agreement and the Sheppard Guarantees, Sheppard personally guaranteed full payment of all indebtedness of the MRH-Parties to Plaintiffs together with all costs, expenses and attorneys' fees incurred by the Plaintiffs in connection with any default of the MRH-Parties.  As explained in the Plaintiffs' Motion for Summary Judgment or Alternatively for Partial Judgement ("Plaintiffs' Motion") the amount of debt currently due to the Plaintiffs from Sheppard under his guaranty agreements is $6,735,015.42, exclusive of attorney's fees.  (Dkt. No. 67, pp. 1-2.)

Sheppard's Motion concedes his liability to Plaintiffs, stating the "[Dealerships] are the primary obligors to the [Plaintiffs]… [and] Mountain West Auto Group and Kevin Sheppard are guarantors of those obligations."  (Dkt. No. 65, Motion, 2:12-15.)  He also admits that Plaintiffs have repossessed and sold the vehicle inventory collateral, and that Plaintiffs have filed Proofs of Claims in the bankruptcy proceedings relating to the Dealerships.  (Dkt. No. 65, Motion, 3:12-23.) In short, Sheppard does not dispute the material facts in the Complaint (also addressed in Plaintiffs' Motion).  (Dkt. No. 1, 68.)

**C.      NRS 482.516 Is Inapplicable and Does Not Apply to the Repossession of Inventory Vehicle Collateral Under Commercial Floorplan Financing**

Sheppard next argues that he is not liable for the deficiency because Ally allegedly failed to comply with the notice of disposition requirements under NRS 482.516.[3]  Sheppard concedes,

---

[3]      Sheppard failed to timely plead NRS 482.516 as an affirmative defense and has therefore waived this defense.  See Dkt. No. 26.  Federal Practice and Procedure (Wright & Miller), § 1278 Effect of Failure to Plead an Affirmative Defense, 5 Fed. Prac. & Proc. Civ. § 1278 (4th ed.) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure

as he must, that Ally gave him the notice of disposition of collateral required under Article 9 of the UCC. He argues only that Ally was also required to comply with NRS 482.516. Sheppard is wrong because NRS 482.516 does not apply to inventory lending by its terms.

The construction of NRS 482.516 is governed by settled rules of statutory construction. The "words in a statute will generally be given their plain meaning, unless such a reading violates the spirit of the act, and when a statute is clear on its face, courts may not go beyond the statute's language to consider legislative intent." *Pellegrini v. State*, 117 Nev. 860, 873–74, 34 P.3d 519, 528 (2001). Further, "this court interprets provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of those statutes to avoid unreasonable or absurd results and give effect to the Legislature's intent." *Simmons Self-Storage Partners, LLC v. Rib Roof, Inc.,* 130 Nev. 540, 546, 331 P.3d 850, 854 (2014).

NRS 482.516 provides as follows: "Any provision in any security agreement for the sale or lease of a vehicle to the contrary notwithstanding, at least 10 days' written notice of intent to sell or again lease a repossessed vehicle must be given to all persons liable on the security agreement. The notice must be given in person or sent by mail directed to the address of the persons shown on the security agreement, unless such persons have notified the holder in writing of a different address." Nev. Rev. Stat. Ann. § 482.516(1).

Here, the plain language of NRS 482.516 shows it does not apply to vehicles held as inventory such as the vehicles at issue here. The statute applies to retail transactions involving a "security agreement for the sale or lease of a vehicle …"[4] Sheppard did not enter into any security

_____

to plead an affirmative defense as required by Federal Rule of Civil Procedure 8(c) results in the waiver of that defense and its exclusion from the case.").

[4] The most common example of a "security agreement for the sale or lease of a vehicle" is the agreement customarily used when an automobile dealership sells a motor vehicle to a retail customer with dealer-provided financing—called a *Retail Installment Sales Contract*. A Retail Installment Sales Contract is an agreement between a buyer and a seller for the sale of a vehicle "on terms," meaning the buyer will typically make a downpayment and will thereafter make monthly payments for several years. To secure the buyer's repayment obligation, the agreement includes a grant of a security interest by the buyer to the selling dealership. Accordingly, because the Retail Installment Sale Contract is a "security agreement for the sale . . . of a vehicle," it fits neatly into the scope of NRS 482.516.

agreement for the sale or lease of a vehicle.  Rather, Sheppard entered into agreements guaranteeing payment of the obligations owed on the non-party Dealerships' inventory loans from Plaintiffs.  Stated differently, Sheppard was simply a guarantor on an inventory loan.  He did not purchase or lease any vehicle from Plaintiffs.

Fundamentally, the parties to an "agreement for the sale … of a vehicle" are the buyer and seller of the vehicle, and the parties to an "agreement for the … lease of a vehicle" are the lessor and lessee of the vehicle.  There are no agreements involved in this suit that fit either of those descriptions.  The agreements between Plaintiffs and the non-party Dealerships were loan and financing agreements—not agreements for the "sale or lease of a vehicle."  The vehicles repossessed by the Ally Parties from the Dealerships were not repossessed under the terms of an "agreement for the sale or lease of a vehicle."  And Plaintiffs are not seeking to collect a judgment under any "agreement for the sale or lease of a vehicle."  Instead, Plaintiffs are enforcing Sheppard's guaranty of certain obligations owed by the Dealerships under loan and financing agreements.  Consequently, NRS 482.516 is not applicable to Plaintiffs' claims.

Consideration of the specific disclosures NRS 482.516 requires to be included in certain post-repossession notices further demonstrates that it is inapplicable to this case.  For example, the notice "[m]ust give notice of the holder's intent *to resell* or *again lease* the vehicle at the expiration of 10 days from the date of giving or mailing the notice …."  NRS 482.516(2)(d).  The emphasized phrase shows the holder is reacquiring property previously sold or leased to a buyer or lessee.  It does not apply by its terms to property a borrower acquires through inventory financing.  Moreover, giving notice that a single vehicle will be sold 10 days after the giving of the notice makes no sense in inventory financing, where there are multiple pieces of collateral and multiple sales, and much of the property being sold are not vehicles.

Similarly, the notice "[m]ust disclose the place at which the vehicle will be returned to the buyer or lessee upon redemption or reinstatement …."  NRS 482.516(2)(e).  As already stated, Sheppard is neither a buyer nor a lessee.  He is merely a guarantor.  He had no right to reinstate or redeem a defaulted retail installment sale contract or lease relating to a vehicle.  Including such a disclosure is illogical in the inventory financing context.

As yet another example, the notice "must either set forth the computation or estimate of the amount of any credit for unearned finance charges or cancelled insurance as of the date of the notice or state that such a credit may be available against the amount due." NRS 482.516(3). Such a disclosure would only be necessary in an individual transaction—*i.e.*, where a buyer finances a car purchase by entering into a conditional sale contract with a precomputed interest rate and/or finances the purchase of insurance that might cover any loss in the event of an accident. There is no conceivable situation where such a disclosure would be required in connection with inventory financing.

Finally, the anti-deficiency rule Sheppard invokes plainly applies only to individual vehicle sales. NRS 482.516(3) states that persons liable under a security agreement "are liable for any deficiency after sale or lease of the repossessed vehicle only if the notice prescribed by this section is given within 60 days after repossession and includes an itemization of the balance and of any costs or fees for delinquency, collection or repossession." The statute refers to a singular "repossessed vehicle," a singular "balance" due on a contract, and a singular "deficiency." Nothing in NRS 482.516 suggests it applies to inventory sales involving a fleet of multiple vehicles and other items of collateral.

Sheppard pays short shrift to the statutory language of NRS 482.516. He does not argue that he financed or leased a vehicle or otherwise explain how the statute applies to inventory financing or guarantors like himself. He instead bases his argument heavily on *In re Dinan*, 425 B.R. 583, 588 (Bankr. D. Nev. 2010), a case that is both easily distinguished and unpersuasive.

While *Dinan* held NRS 482.516 applied under the unique facts of that case, it did not involve inventory financing or a personal guaranty. Instead, there, the debtors obtained a loan secured by certain vehicles and construction equipment that they represented would be used to pay delinquent taxes. *Id.* at 585-88. The *Dinan* Court's conclusion that NRS 482.516 applied to the subsequent disposition of those vehicles and collateral thus has no bearing on whether NRS 482.516 applies to inventory financing.

Further, insofar as *In re Dinan* is pertinent, it is neither binding nor persuasive. The Court there did not analyze the language of NRS 482.516 or explain how it could apply in a case where

there was no purchase or lease of a vehicle. *Dinan*'s conclusion that NRS 482.516 could apply merely because the "construction equipment and vehicles are taken as security for repayment" is unsupported by the text of the statute. This Court should not follow it into error because NRS 482.516 plainly does not apply to inventory financing for the reasons stated above.

In short, Plaintiffs gave the post-repossession notices required by the UCC. Sheppard's argument that Plaintiffs were also required to give additional notices designed for individual purchase or lease transactions is wrong and should be rejected.

## III.    NON-INVENTORY FINANCING OBLIGATIONS

NRS 482.516 does not apply to Advance Agreement and Term Loan Agreement. Neither of these agreements involve the sale of vehicles whatsoever. The Advance Agreement memorialized a $1.5 million advance from MIC to the Dealerships as well as a formula for repayment of this advance by the Dealerships from the Dealerships' sales of insurance products. The Term Loan Agreement was for a $2.5 million loan to MRH-Enterprises to finance the group's acquisition of dealership assets (e.g., parts, equipment and intangible goodwill value). As such, NRS 482.516 does not apply to these obligations.

## IV.    SHEPPARD CONTRACTUALLY WAIVED ANY NOTICE REQUIREMENTS

To the extent NRS 482.516 applies (it does not), Sheppard contractually waived any rights he may have had under the statute. These waivers, which Sheppard knowingly and voluntarily signed, broadly cover all claims and defenses, except for payment in full, even if the primary obligor's obligation was discharged by statute (it was not). Thus, Sheppard's defense under NRS 482.516 cannot be used to defeat Plaintiffs' summary judgment motion.

"It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 278, 21 P.3d 16, 20 (2001) (quoting *Ellison v. C.S.A.A.*, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990)). For example, "in accordance with Nevada's public policy favoring the enforceability of contracts, … contractual jury trial waivers are presumptively valid unless the challenging party can demonstrate that the waiver was not entered into knowingly, voluntarily or intentionally." *Lowe Enterprises Residential Partners, L.P. v. Eighth Judicial Dist. Court ex rel.*

*County of Clark*, 118 Nev. 92, 100 (2002) (see also *Miller v. A & R Joint Venture*, 97 Nev. 580, 582, (1981) (holding that an exculpatory lease provision was a valid exercise of the freedom to contract); *Hansen v. Edwards*, 83 Nev. 189, 192 (1967) (noting the public's interest in the enforcement of contractual rights and obligations).).

Under the Sheppard Guarantees, Sheppard expressly "waive[d] any and all defenses, claims, and discharges of any other party pertaining to the obligations except the defense of payment in full." The Sheppard Guarantees further provide that "[g]uarantor expressly agrees that it will be and will remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing the obligations, whether or not the liability of any other obliger for such deficiency is discharged pursuant to statute or judicial decision." In addition, the Sheppard Guarantees state, "[F]urther, Guarantor expressly waives any condition precedent that may be required of the Ally Parties under applicable law prior to proceeding with any action to recover any deficiency remaining after foreclosure."

Evidence of the knowing and voluntary nature of Defendants' agreement to these waivers can be found in the fact that Sheppard is an experienced, sophisticated party. There are no allegations (let alone evidence) that Sheppard was unaware of the waiver provisions or that he lacked the opportunity to review the Sheppard Guarantees before he signed the agreements. Thus, the waivers should be enforced and Sheppard's defense under NRS 482.516 should be rejected.

///

## V.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court deny Sheppard's Motion for Summary Judgment.

DATED:  August 11, 2025

By:    */s/ Andrew S. Elliott*

Andrew S. Elliott, Esq.
Admitted *pro hac vice*
STINSON LLP
595 Market Street, Suite 2600
San Francisco, California 94105
Attorneys for Plaintiffs
ALLY FINANCIAL INC., ALLY BANK, and MOTORS INSURANCE CORPORATION

- and -

By:    /s/ *Michael R. Brooks*

Michael R. Brooks
GHIDOTTI | BERGER, LLP
7251 W. Lake Mead Blvd., Ste. 470
Las Vegas, Nevada 89128
Telephone: (949) 427-2010
Email: mbrooks@ghidottiberger.com